ELLIOTT et al. v. CITY OF BROWNWOOD.
(No. 4,730.)

(Court of Civil Appeals of Texas. Austin.
June 7, 1911. Certified Questions Answered
by Supreme Court May 6, 1914.)

DEATH (§ 33*)—ACTION FOR DEATH—LIABIL-
ITY.

Under the statute authorizing an action for
death by negligent act, a municipal corporation
is not liable for the death of a person caused
by its negligence in maintaining its streets.

[Ed. Note.—For other cases, see Death, Cent.
Dig. § 49; Dec. Dig. § 33.*]

Furman, J., dissenting.

Appeal from District Court, Brown Coun-
ty; John W. Goodwin, Judge.

Action by Mary B. Elliott and others against
the City of Brownwood. From a judgment
sustaining a general demurrer to the petition,
plaintiffs appeal. Affirmed.

Certified question answered by Supreme
Court in 166 S. W. 1129.

A. S. Fisher and W. M. Allison, both of
Georgetown, and Arch Grinnan, of Brown-
wood, for appellants. C. L. McCartney, of
Brownwood, for appellee.

KEY, C. J. This suit was brought by Ma-
ry B. Elliott, the surviving wife, and other
relatives of Otho S. Elliott, seeking to re-
cover damages from the city of Brownwood
on account of the death of Otho S. Elliott.
The plaintiffs alleged in their petition that
the defendant was a municipal corporation
of more than 1,000 inhabitants, duly incorpo-
rated under title 18, c. 1, of the Revised Stat-
utes of Texas. They predicated their cause
of action upon alleged negligence of the de-
fendant in reference to a certain street and
bridge or culvert across the same, which
street the defendant had opened up and was
maintaining for the use of the public, and
which bridge or culvert it had constructed
across the street. It was alleged that on
May 23, 1908, a heavy rain fell in the city
of Brownwood and vicinity, which rain caus-
ed the timbers and boards of the bridge re-
ferred to to be severed from their fastenings
and washed away, which resulted in a pit or
trench about 6 feet deep and 20 feet wide in
the street. It was further alleged that on
May 26, 1908, during the nighttime, and while
it was very dark, Otho S. Elliott was passing
along said street on horseback, without any
knowledge of the absence of the timbers and
boards of the bridge, and without any knowl-
edge of the pit or trench referred to, and,
without fault on his part, his horse fell or
plunged headlong into said pit or trench, and
as a result thereof Otho S. Elliott was killed.
The petition contained all other averments
necessary to show that the plaintiffs had a
cause of action against the defendant, if the
statute creating a cause of action in behalf
of relatives when the death of one person is
caused by the wrongful act of another per-
son includes in the latter class a municipal
corporation when the wrongful conduct
charged against such corporation relates to
acts done or omitted in opening or maintain-
ing public streets within the limits of such
corporation. The trial court sustained a
general demurrer to the plaintiffs' petition,
and the latter have appealed and assign er-
ror upon that ruling.

The statute referred to was construed by
this court in Ritz v. City of Austin, 1 Tex.
Civ. App. 455, 20 S. W. 1029, in which it was
held that the word "person," as used in that
statute, did not include a corporation. Al-
though a writ of error was refused in that
case, our Supreme Court, in Flemming v.
Texas Loan Agency, 87 Tex. 238, 27 S. W.
126, 26 L. R. A. 250, held that the statute
was intended to include and render liable
private corporations. In that case the Su-
preme Court said: "The reasoning in the
case of Ritz v. City of Austin, 1 Tex. Civ.
App. 455 [20 S. W. 1029], in which an appli-
cation for a writ of error was refused by this
court, is not in accordance with the view ex-
pressed in this opinion. That was a case of
a municipal corporation, and is distinguish-
able from this case. In rejecting an applica-
tion for a writ of error, we approve the re-
sult of the case as determined by the Court
of Civil Appeals, but do not necessarily adopt
the opinion."

As a matter of fact the Ritz Case had
another question in it; but the foregoing
excerpt from the opinion in the Flemming
Case indicates that the writ of error was
refused upon the ground that the city of
Austin was a municipal corporation, and
therefore not within the purview of the stat-
ute creating a cause of action in favor of a
surviving relative, when the death of one
person is caused by the wrongful act, negli-
gence, unskillfulness, or default of another.
Ritz's death was caused by a defective
street.

After the Flemming Case was decided, the
case of Searight v. City of Austin, 42 S. W.
857, which involved a similar question of
municipal liability, came before this court.
In that case the deceased lost his life while
working for the city upon one of its electric
light towers, and this court affirmed the ac-
tion of the trial court in holding that the mu-
nicipality was not liable, and the Supreme
Court refused to grant a writ of error. In
that case this court said: "It was decided
by this court in the case of Ritz v. City of
Austin, 1 Tex. Civ. App. 455, 20 S. W. 1029,
that such a suit would not lie against a mu-
nicipal city corporation. The Supreme Court
refused a writ of error in that case. In a
later case the Supreme Court held that such
a suit was maintainable against a private
corporation (Flemming v. Loan Agency, 87
Tex. 238, 27 S. W. 126 [26 L. R. A. 250]); but,
as we understand the court, it approved the

result of the case decided by this court. The court distinguishes between a private and a municipal corporation. We believe the case last cited settles the law of the case at bar adversely to the appellants, and the judgment of the lower court is affirmed."

In the case at bar counsel for appellants have presented a strong argument, and have cited cases in other jurisdictions construing statutes somewhat similar to ours, and holding that, when the facts alleged would have constituted a cause of action in favor of the deceased, if death had not resulted, such statutes create a cause of action against a municipality in favor of the beneficiaries mentioned in the statute; and, if that was an open question in this state, we might feel disposed to follow such authorities and hold that the petition under consideration states a cause of action. However, we regard the action of the Supreme Court in refusing a writ of error in the Ritz Case for the reason stated by that court in the Flemming Case, and the subsequent action of that tribunal in refusing a writ of error in the Searight Case, as having settled the question in this state.

Counsel for appellant have cited some other cases decided by our Supreme Court, none of which sought to recover damages for injuries resulting in death, except City of Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519. But in that case it is apparent from the opinion of the court that whether or not the statute created a cause of action against a municipality for damages caused by injuries resulting in death was not presented or considered. Prior to 1892 many suits were maintained and judgments affirmed by the Supreme Court against receivers of railroads; but, when the question was raised as to whether or not the statute creating such cause of action included receivers, that court held that it did not, and stated that the affirmance of former judgments against such receivers, where the question was neither suggested nor considered, did not constitute adjudications of the question. Turner v. Croos & Eddy, Receivers, 83 Tex. 231, 18 S. W. 578, 15 L. R. A. 262. In the Barbour Case above cited and relied on by appellant's counsel, the judgment of the trial court was not affirmed, but was reversed and remanded, and, as to the question of liability, the court merely said: "The question of the liability of a municipal corporation for damages for an injury resulting from neglect to keep its sidewalks and streets in repair has been considered in the case of the City of Galveston v. Posnainsky [62 Tex. 118, 50 Am. Rep. 517], decided at the present term, . * * * and for the reasons given, and upon the authorities cited in that case, we hold in this case that such a corporation is liable for such injury, in the absence of an express statute declaring the liability." That quotation, taken in connection with the case therein cited, which was decided the day previous, shows that the court did not have in mind, consider

or decide any question of liability based upon a statute creating a cause of action. In fact the last clause of the quotation, as well as the Posnainsky Case therein referred to, shows that the court had in mind the question of common-law liability, and not of liability created by statute law.

Counsel for appellant lay great stress upon the case of City of Galveston v. Posnainsky, 62 Tex. 119, 50 Am. Rep. 517, wherein several general principles are announced and supported by authorities therein referred to, and in which Chief Justice Willie was disqualified, and the other members of the court held that a person who was injured, but not killed, by reason of the negligent failure of the city of Galveston to properly maintain a street could recover damages, resting such liability, not upon any statute, but upon the common law. That decision has been repeatedly followed, and, unless overruled by the Supreme Court, will continue as the rule of law in this state, although it is contrary to many decisions in other jurisdictions. And in White v. City of San Antonio, 94 Tex. 316, 60 S. W. 426, while seemingly conceding that the question was finally settled by the Posnainsky Case, Chief Justice Gaines said: "Since the public have a right to use the streets of a city, and they are for the benefit of the public at large, and not peculiarly for the interest of the corporation, it seems difficult to justify the holding under the general rule. However, the law is so settled in this state and very generally so settled elsewhere, either by statute or by judicial decision."

Without questioning the authority of the Posnainsky Case, it is not considered amiss for the writer of this opinion to say that investigation made in this case has led him to doubt if the weight of authority supports that case. Many of the cases on the subject were reviewed by Chief Justice Gray in Hill v. Boston, 122 Mass. 344, 23 Am. Rep. 332, is an elaborate and forcible opinion, dealing with the question of municipal liability for damages sounding in tort; and it is shown in that opinion that many of the cases relied on in support of the proposition that such liability exists at common law were based upon charters or statutes held to create such liability. In Hill v. Boston, supra, it is pointed out that Oliver v. Worcester, 102 Mass. 489, 3 Am. Rep. 485, which is quoted from in the opinion in the Posnainsky Case, was a case in which a city, not in the discharge of any public duty, was holding and dealing with property as its own, for its own benefit, and in the same was as a private owner might. As Hill v. Boston does not appear to have been cited by either the court or counsel in the Posnainsky Case, it is reasonable to suppose that it was overlooked. The Posnainsky Case is in conflict with City of Navasota v. Pearce, 46 Tex. 525, 26 Am. Rep. 279, in which it was held that the municipality was not liable to one who was injured

by its negligent failure to keep its streets in repair.

It is contended on behalf of appellant that a municipal corporation, as is shown in the Posnainsky Case, acts in a dual capacity, one governmental or public, and the other in a sense proprietary or private, and that, when it acts in the former capacity, it cannot be held liable for the negligence or misfeasance of its officers or representatives, but, when it acts in the latter capacity, it can and should be so held. That proposition is followed with the further contention that, as it was settled in the Posnainsky Case that a municipal corporation in opening and maintaining streets does not act in a governmental or public capacity, but acts for its own benefit, the statute creating liability when the death of one person is caused by the misconduct or negligence of another person should be so construed as to include a municipal corporation when the death results from its negligent failure to properly maintain a street. Our answer to that is that the Supreme Court has, in effect, held otherwise in the Ritz Case and the Searight Case, heretofore referred to.

In reaching the conclusion that the statute did not include a municipal corporation, we do not know, any more than may be inferred, what was in the minds of the members of the Supreme Court. It may be that they failed to be impressed with the suggestions so forcibly urged by appellants' counsel in this case, and it may be that they had doubts and regrets concerning the Posnainsky Case, and were not willing to make it a predicate upon which to extend the liability of municipal corporations.

It is also worthy of note, and a circumstance of some importance in determining whether or not it was the legislative intent that the word "person" should include a municipal corporation, that, when the statute in question was first enacted, it had not been held by our Supreme Court that such corporations were liable at common law for damages resulting from failure to properly maintain streets; and outside decisions were in conflict upon that subject, and the court referred to has since that time rendered conflicting decisions upon it. Navasota v. Pearce, supra; Galveston v. Posnainsky, supra.

It has been held in this state that neither the state nor a county can be held liable at common law for the failure of either or both to properly maintain public roads, and it is impossible for the writer of this opinion to perceive any sound distinction between a county and a city in that respect. A street in a city is as much a public highway as a turnpike or dirt road not within the limits of a municipal corporation, and the maintenance of a street by a municipal corporation is as much the exercise of a public function as is the maintenance of a public road by a county.

For the reasons given, a majority of this court has reached the conclusion that the trial court ruled correctly when it sustained the demurrer to appellants' petition, and its judgment is therefore affirmed.

Affirmed.

JENKINS, J., being disqualified, did not sit in this case.

FURMAN, J. (dissenting). Adopting the statement of the case as set forth in the opinion of a majority of this court, the writer hereof is constrained to dissent from the conclusions reached by the court for the following reasons:

It was clearly decided in the case of Ritz v. City of Austin, 1 Tex. Civ. App. 455, 20 S. W. 1029, that, under clause 2, art. 3017, of the Revised Statutes of Texas an action for damages would not lie against a corporation, and that the word "another," as used in said clause 2, was intended to mean and did mean another natural "person," and did not include an "artificial" person or corporation. Which principle was later followed and reaffirmed in the case of Searight v. City of Austin, 42 S. W. 857, by this court; in which two cases writs of error were denied by our Supreme Court. It does not seem clear, however, that the precise question raised herein was raised in the Searight Case. It appears, then, from the face of the decision that our Supreme Court approved the principle laid down in the Ritz Case, and held that the word "person" and "another," as used in said clause 2, art. 3017, are used and employed in their popular sense, and mean an individual and not an artificial person. In a later case, however, than the Ritz Case, viz., Flemming v. Loan Agency, 87 Tex. 238, 27 S. W. 126, 26 L. R. A. 250, our Supreme Court modified the effect of the decision in the Ritz Case, and decided, in effect, that the word "another," as employed in said clause 2, art. 3017, was not limited to natural persons only but did include private corporations, which construction has since been followed and reaffirmed in a number of cases, so that it may be justly assumed that the law is definitely settled in this state that, under said clause 2, art. 3017, of the Revised Statutes of 1895, an action will now lie against a private corporation when the death of any person is caused by its wrongful act, negligence, unskillfulness, or default. It further appears, too well settled to admit of controversy, that a municipal corporation—a city, for example —acts in a twofold capacity. "Certain functions are conferred upon it in the interest of the public at large, and certain others for the peculiar advantage of its own inhabitants. For the unlawful acts of its officers in performing functions of the former class, the corporation is held, as a rule, not to be responsible; but, for their torts in discharging duties of a purely corporate character, the corporation is liable. White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426;

City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517, and numerous cases therein cited."

It is not deemed necessary in deciding this case to follow the reasoning of the various courts by which they have arrived at the conclusion that a municipal corporation—a city for example—is held liable for a failure to keep its streets, sidewalks, and bridges in repair. Suffice it to say, in the language of Mr. Justice Gaines in the case of White v. City of San Antonio, 94 Tex. 316, 60 S. W. 427, "as to the liability of cities for the negligence of its officers in opening and maintaining its streets there is some contrariety of opinion though it is held, as we think, by the great weight of authority, that they are so liable." It would seem, then, that if a municipal corporation—a city for example—incorporated under the general laws of Texas, is to be held liable for damages for neglect of corporate duty in failing to keep its streets, sidewalks, and bridges in repair, it must follow that such duty appertains to it in its character as a private corporation, and the exercise of such duty is not a governmental function. ·

Hence it is clear that it is the character, purpose, and object of the act done or duty neglected that determines whether a municipal corporation—a city—is or is not exempt from liability for wrongful acts or negligence causing injury, and not the mere fact of incorporation as a municipality vel non.

In the discharge of certain involuntary duties under the terms of its charter, an incorporated city may perform functions that are governmental and essentially public in character, and would enjoy immunity from liability for negligence in the performance thereof. While the same city may voluntarily assume optional duties under its charter that are essentially private in object, scope, and character, in which latter event such city would act in the capacity of a private corporation, and would be held responsible for damages resulting from its negligence, wrongfulness, or default as such, and could not and should not be permitted by the law to invoke, as a shield from liability for acts or defaults committed in furthering its private interest, the mere fact that at the time of the act or default complained of it was also invested with other powers, functions, and duties essentially public. We understand that the reason for the rule exempting municipal city corporations from liability for acts or negligence of their officers is based on the theory that such corporation, while in the discharge of governmental functions, is a part of the state government, and as such may not be sued without the consent of the state; but when, in a particular case, the pleadings disclose that the act or failure of duty complained of does not come within the purview of a governmental function, then the maxim that, when the reason for the rule fails, the rule also will fail applies.

If the act or omission of duty causing the alleged injury is shown by the pleadings to be of the class denominated as a governmental function, a different question would be before us; but where, as in this case, the petition specifically complains of an act and a failure of duty which our Supreme Court holds in repeated decisions to be of a character pertaining to private corporations, it would seem that the defendant, for the purposes of this case, has elected to act and did act as a de facto private corporation in erecting the bridge complained of, and in failing to keep same in repair, as alleged. And it is the opinion of the writer that the petition states a good cause of action, and that the demurrers addressed thereto in the district court of Brown county should have been overruled, and that the judgment of the district court of Brown county should be reversed, and this cause remanded for trial in said court.